1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

7

8

9

10

11

COLLEEN A. GRAHAM,

                     Plaintiff,

     v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                   Defendant.

Case No. 3:14-cv-05311-BHS-KLS

REPORT AND RECOMMENDATION

Noted for January 23, 2015

12

13

14

15

16

17

18

19

20

21

22

        Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits. This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits be

reversed and this matter be remanded for further administrative proceedings.

23

FACTUAL AND PROCEDURAL HISTORY

24

25

26

        On August 13, 2011, plaintiff filed an application for disability insurance benefits and

another one for SSI benefits, alleging in both applications she became disabled beginning July

31, 2009. See ECF #9, Administrative Record ("AR") 17. Both applications were denied upon

REPORT AND RECOMMENDATION - 1

initial administrative review on March 27, 2012, and on reconsideration on May 4, 2012. See id.

A hearing was held before an administrative law judge ("ALJ") on September 7, 2012, at which

plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 34-

80.

In a decision dated December 11, 2012, the ALJ determined plaintiff to be not disabled.

See AR 17-28. Plaintiff's request for review of the ALJ's decision was denied by the Appeals

Council on February 27, 2014, making that decision the final decision of the Commissioner of

Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481. On April 25,

2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final

decision. See ECF #3. The administrative record was filed with the Court on July 1, 2014. See

ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the

Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded

for an award of benefits, or in the alternative for further administrative proceedings, because the

ALJ erred: (1) in rejecting the opinion of plaintiff's treating physician, Edward Case, M.D.; (2)

in discounting plaintiff's credibility; and (3) in assessing plaintiff's residual functional capacity.

Plaintiff also argues this case should be remanded because additional medical opinion evidence

submitted to the Appeals Council was not included in the record. For the reasons set forth below,

the undersigned agrees the ALJ erred in rejecting the opinion of Dr. Case, in discounting

plaintiff's credibility and in assessing her residual functional capacity, and therefore in

determining plaintiff to be not disabled. Also for the reasons set forth below, however, the

undersigned recommends that while defendant's decision should be reversed on this basis, this

matter should be remanded for further administrative proceedings.

REPORT AND RECOMMENDATION - 2

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must

REPORT AND RECOMMENDATION - 3

1

I.        The ALJ's Rejection of Dr. Case's Opinion

2

        The ALJ is responsible for determining credibility and resolving ambiguities and

3

conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

4

Where the medical evidence in the record is not conclusive, "questions of credibility and

5

resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

6

642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v.

7

Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining

8

whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

9

all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

10

within this responsibility." Id. at 603.

11

        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

12

"must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this

13

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

14

stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences

15

"logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may

16

draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

17

F.2d 747, 755, (9th Cir. 1989).

18

        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

19

opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

20

1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can

21

only be rejected for specific and legitimate reasons that are supported by substantial evidence in

22

23

24

25

26

       scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
       rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In late August 2012, Dr. Case completed a mental impairment questionnaire, in which he found plaintiff to be "[s]ignificantly limited, but not precluded" in several mental functional areas, including:

- Maintaining regular attendance and being punctual within customary, usually strict tolerances;

- Sustaining an ordinary routine without special supervision;

- Working in coordination with or proximity to others without being unduly distracted;

- Making simple work-related decisions;

REPORT AND RECOMMENDATION - 5

1

2

- Performing at a consistent pace without an unreasonable number and length of rest periods;

3

- Getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and

4

5

- Dealing with normal work stress.

6

AR 786. Dr. Case further found plaintiff to be "[u]nable to meet competitive standards" in regard

7

to: completing a normal workday and workweek without interruptions from psychologically

8

based symptoms; accepting instructions and responding appropriately to criticism from

9

supervisors; and responding appropriately to changes in a routine work setting. Id. With respect

10

to Dr. Case's findings, the ALJ stated:

11

12

13

14

15

16

17

18

19

20

21

22

> I give some weight to the opinion of the claimant's treating physician Edward Case, M.D. (Exhibit 2F; 14F; 15F). Dr. Case indicated several competing diagnoses throughout the record including bipolar disorder, generalized anxiety disorder, alcohol abuse, personality disorder and panic disorder with agoraphobia. Despite the unclear categorization of the claimant's mental impairments Dr. Case opined that overall the claimant had moderate limitations in her activities of daily living [and] social interactions and mild limitations in her concentration persistence and pace. Dr. Case further indicated four or more episodes of decompensation. While there is evidence of inpatient psychiatric hospitalizations, the claimant was generally discharged quickly with reduced symptoms. I give some weight to Dr. Case's assessment regarding the claimant's moderate limitations in her social functioning as this is consistent with her reports of difficulty in public situations. However, his assessment that the claimant had only mild limitations in concentration[,] persistence and pace is inconsistent with earlier treatment notes that indicated the claimant would be unable to meet competitive standards. Therefore, due to the internal inconsistencies of Dr. Case's notes and considering the medical record as a whole, I only give some weight to the opinion of Dr. Case.

23

AR 25. Plaintiff argues the ALJ failed to adequately address all of the functional limitations Dr.

24

Case assessed. The undersigned agrees.

25

Defendant argues the internal inconsistencies in Dr. Case's notes that the ALJ pointed out

26

constitute a sufficient basis for rejecting the above assessed limitations. But it is not at all clear

REPORT AND RECOMMENDATION - 6

that the existence of only mild limitations in concentration, persistence or pace contradicts all, or even the majority of, the limitations Dr. Case assessed. Further, while it certainly is true as noted above that a treating physician's opinion may be rejected if it is inconsistent with other medical evidence in the record, the ALJ utterly fails to explain how that other evidence in fact contradicts Dr. Case's opinion. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).[2]

II.     The ALJ's Discounting of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

_____

[2] As the Ninth Circuit succinctly stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . .

Id. (internal footnote omitted); see also Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

REPORT AND RECOMMENDATION - 7

1   and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of

2   malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

3          In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

4   credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

5   symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

6   1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of

7   physicians and other third parties regarding the nature, onset, duration, and frequency of

8   symptoms. See id.

9

10         The ALJ offered the following reasons for discounting plaintiff's credibility:

11         The above discussion of the treatment record shows that the claimant's
           allegations are not consistent with the medical record. Despite the claimant's
12         mental impairments, the claimant generally presented as oriented, with intact
           memory and concentration (Exhibit 2F/4; 4F/6[;] 7F/13; 11F/2). Furthermore,
13         the claimant's overall mental health symptoms appeared to respond well to
           treatment (Exhibit 7F/40; 11F/2; 14F/5). Although the claimant experienced
14         intermittent exacerbations in her symptoms, these periods were short lived and
           largely related to environmental factors such as being overwhelmed by marital
15         issues and caring for her aging parents (Exhibit 7F. 11F; 14F).

16
           The claimant's reported activities also shed doubt on her allegations. The
17         claimant reported being able to drive, make simple meals, do household
           repairs, and do household chores such as laundry and cleaning the toilet
18         (Exhibit 4E/6). The claimant additionally reported being able to grocery shop
           and use a computer to play online video games and pay bills.
19

20         It is also relevant that the claimant received unemployment compensation
           after she alleges that she became disabled and unable to work (Exhibit 5D). In
21         order to receive such payments, the claimant had to have attested that she was
           physically and mentally able to work, as well as that she was actively seeking
22         work. The claimant's receipt of unemployment benefits is in clear conflict
           with her allegation that she was disabled and unable to work at that time. Such
23         inconsistencies and contradictions erode the credibility of the claimant's
           allegations of total disability.
24

25   AR 24. Plaintiff argues the ALJ failed to provide legally sufficient reasons for discounting his

26   credibility. Again, the undersigned agrees.

     REPORT AND RECOMMENDATION - 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

A determination that a claimant's complaints are inconsistent with the medical evidence can satisfy the clear and convincing requirement. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1998). But as pointed out by plaintiff and as discussed above in regard to Dr. Case's opinion, the fact that plaintiff may have "presented as oriented, with intact memory and concentration" (AR 24), does not necessarily conflict with the symptoms and limitations she has alleged that are not – or not significantly – affected by the functional areas of orientation, memory or concentration. The undersigned also finds that while the record indicates there were some periods of mental health symptom improvement, those periods were not long lived, and plaintiff's condition continued to wax and wane over time. See AR 285-86, 300-29, 448, 450-52, 491, 493, 504, 506-08, 512, 515-18, 520, 526, 565-70, 675-76, 689, 692-94, 697, 707, 710, 714-82.

In addition, although stressors in plaintiff's life did appear to result in exacerbations in her symptoms, the exacerbations were not always tied to any specific stressors, and there is no indication in the record that her mental health conditions would not have continued to have a significant impact on her ability to function absent them. See id. As for a claimant's activities, the Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, they can "meet the threshold for transferable work skills." Id. Second, they can "contradict his other testimony." Id. The record in this case fails to show, however, that plaintiff performed her activities of daily living at a frequency or to an extent indicative of transferrable work skills or that would otherwise contradict her other testimony. See AR 45-48, 61-64, 74-75, 233-37, 240, 242-45, 248, 254, 262, 382; see also Smolen, 80 F.3d at 1284 (claimant's credibility may be discounted based on his or her activities of daily living if he or she "is able to spend a substantial

REPORT AND RECOMMENDATION - 9

part of his or her day performing household chores or other activities that are transferable to a work setting").

Lastly, "receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161-62 (9th Cir. 2008) (citing Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir.1988)). But where the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work," such a "basis for the ALJ's credibility finding is not supported by substantial evidence," as "[o]nly the former is inconsistent with his disability allegations." Id. Defendant concedes that the record is unclear as to whether plaintiff held herself out for full-time work, but argues that "her hearing testimony suggests she knew that receipt of benefits in her case was inconsistent with her claimed disability," a conclusion that is supported by her testimony "that, in essence, she falsely held herself out as able to work because she needed the money. ECF #16, p. 8 (citing AR 44-45). It seems clear from the ALJ's discussion of plaintiff's receipt of unemployment benefits, though, that this was not the reason he cited receipt thereof as a basis for discounting her credibility. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court cannot affirm agency decision on ground that agency did not invoke in making its decision); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's decision based on evidence ALJ did not discuss).

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on

REPORT AND RECOMMENDATION - 10

1   the basis of medical factors alone at step three of that process," the ALJ must identify the

2   claimant's "functional limitations and restrictions" and assess his or her "remaining capacities

3   for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A

4   claimant's residual functional capacity ("RFC") assessment is used at step four to determine

5   whether he or she can do his or her past relevant work, and at step five to determine whether he

6   or she can do other work. See id.

7

8          Residual functional capacity thus is what the claimant "can still do despite his or her

9   limitations." Id. It is the maximum amount of work the claimant is able to perform based on all

10  of the relevant evidence in the record. See id. However, an inability to work must result from the

11  claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those

12  limitations and restrictions "attributable to medically determinable impairments." Id. In assessing

13  a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related

14  functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

15  medical or other evidence." Id. at *7.

16

17         The ALJ found plaintiff had the residual functional capacity:

18         **. . . to perform a full range of work at all exertional levels but with the
           following nonexertional limitations: The claimant can perform simple
19         routine tasks and some complex tasks defined as those with a reasoning
           level of three or lower. The claimant can have frequent changes in the
20         work setting and occasional interaction with supervisors, coworkers and
           the public.**
21

22  AR 21-22 (emphasis in original). Plaintiff argues, and once more the undersigned agrees, that in

23  light of the ALJ's failure to properly reject the opinion of Dr. Case, it cannot be said that this

24  RFC assessment contains all of plaintiff's functional limitations, and therefore that it is supported

25  by substantial evidence. The same is true in regard to the ALJ's failure to properly discount

26  plaintiff's credibility.

REPORT AND RECOMMENDATION - 11

1    IV.    This Matter Should Be Remanded for Further Administrative Proceedings

2         The Court may remand this case "either for additional evidence and findings or to award

3    benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the

4    proper course, except in rare circumstances, is to remand to the agency for additional

5    investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

6    omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is

7    unable to perform gainful employment in the national economy," that "remand for an immediate

8    award of benefits is appropriate." Id.

9         Benefits may be awarded where "the record has been fully developed" and "further

10   administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

11   v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded

12   where:

13
14        (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
          claimant's] evidence, (2) there are no outstanding issues that must be resolved
15        before a determination of disability can be made, and (3) it is clear from the
          record that the ALJ would be required to find the claimant disabled were such
16        evidence credited.
17
18   Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

19   Because issues still remain in regard to the medical evidence in the record concerning plaintiff's

20   mental functional capabilities, and thus her ability to perform other jobs existing in significant

21   numbers in the national economy, remand for further consideration of those issues is warranted.[3]

22
23   _____

24   [3] If a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation
     process, at step five of that process the ALJ must show there are a significant number of jobs in the national
     economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §
     404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. Tackett, 180
25   F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). An ALJ's findings will be upheld if
     the weight of the medical evidence supports the hypothetical the ALJ poses to the vocational expert. See Martinez v.
26   Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational
     expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See
     Embrey, 849 F.2d at 422. Accordingly, the ALJ's description of the claimant's disability "must be accurate,

REPORT AND RECOMMENDATION - 12

Plaintiff argues that because the ALJ erred in rejecting Dr. Case's opinion and in assessing her credibility, both that opinion and her testimony should be credited as true. It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted).  However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met.  Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003).  Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit  "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at 1116. Here, given the presence of other medical opinion evidence in the record that conflicts with that from Dr. Case that the ALJ credited and plaintiff did not challenge (see AR 24-25), and the lack of vocational expert testimony based on the limitations Dr. Case found, the undersigned declines to apply the credit as true rule here. See Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014) (courts should "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled").

It also is true the Ninth Circuit has held that remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if

_____

detailed, and supported by the medical record." Id. (citations omitted). The ALJ in this case found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, based on the testimony of the vocational expert provided in response to a hypothetical question containing the same limitations as the ALJ included in his assessment of plaintiff's RFC. See AR 27. Again, though, because that assessment is not supported by substantial evidence for the reasons discussed above, the hypothetical question – and thus the vocational expert's testimony and the ALJ's step five determination – also is not supported by substantial evidence.

REPORT AND RECOMMENDATION - 13

1   he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir.

2   2003).  The Court of Appeals in Connett went on to state, however, it was "not convinced" the

3   "crediting as true" rule was mandatory. Id.  Thus, at least where findings are insufficient as to

4   whether a claimant's testimony should be "credited as true," it appears the courts "have some

5   flexibility in applying" that rule. Id.; see also Garrison, 759 F.3d at 1021. For the same reasons

6   just discussed, namely that outstanding issues in the medical evidence concerning the nature and

7   extent of plaintiff's mental functional limitations remain, the undersigned declines to apply the

8   credit as true rule here as well.

9

10                                        CONCLUSION

11          Based on the foregoing discussion, the undersigned recommends the Court find the ALJ

12   improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as

13   well that the Court reverse the decision to deny benefits and remand this matter for further

14   administrative proceedings in accordance with the findings contained herein.

15          Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

16   72(b), the parties shall have **fourteen (14) days** from service of this Report and

17   Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file

18   objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn,

19   474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

20   is directed set this matter for consideration on **January 23, 2015**, as noted in the caption.

21          DATED this 8th day of January, 2015.

22

23

24

25

26                                        Karen L. Strombom
                                          United States Magistrate Judge

REPORT AND RECOMMENDATION - 14